**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| 50 WATERVILLE STREET | ) | 3:21-CV-00368 (KAD) |
| TRUST, LLC | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | DECEMBER 27, 2022 |
| VERMONT MUTUAL INSURANCE | ) | |
| CO. | | |
| *Defendant*. | | |

**MEMORANDUM OF DECISION**
**RE: CROSS MOTIONS FOR SUMMARY JUDGMENT, ECF Nos. 30 & 31**

Kari A. Dooley, United States District Judge:

On an unknown date (though likely in 2019), Plaintiff 50 Waterville Street Trust, LLC's

property suffered damage of an unknown nature (though likely water damage) as a result of an

unknown event or cause. Thereafter, Plaintiff—an insured under a business owner's insurance

policy issued by Defendant Vermont Mutual Insurance Company—commenced this breach of

contract action when Defendant declined to cover the property damage under the policy. Plaintiff

also asserts a claim for Defendant's alleged breach of the implied covenant of good faith and fair

dealing. Both parties seek summary judgment. Defendant argues that it has no obligation to

Plaintiff under the policy because Plaintiff failed to satisfy a condition precedent to coverage—

namely, the timely provision of a signed and sworn proof of loss as required by the policy. For the

reasons set forth below, Plaintiff's motion for summary judgment, ECF No. 31, is DENIED, and

Defendant's motion for summary judgment, ECF No. 30, is GRANTED.

**STANDARD OF REVIEW**

The standard under which courts review motions for summary judgment is well

established. "The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. As a result, the moving party satisfies its burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets its burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Id.*; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). Where, however, the case turns on a question of law, as to which the facts are not in dispute, summary judgment is appropriate. *See Anderson*, 477 U.S. at 247–48.

## FACTS AND PROCEDURAL HISTORY[1]

Plaintiff, a Connecticut limited liability company, owns a one-family dwelling unit ("the property") located at 50 Waterville Street in Waterbury, Connecticut. Pl.'s SMF ¶¶ 1–2. The property was covered by a businessowners insurance policy issued to Plaintiff by Defendant for the period of May 24, 2019 to May 24, 2020. Def.'s SMF ¶ 4. The policy provides that Defendant "will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." Def.'s Ex. A ("Policy") at 1 ¶ A(1), ECF No. 30-6. "Covered Cause of Loss" is defined under the policy as "Risks Of Direct Physical Loss unless the loss is" excluded or limited by the policy. *Id.* at 2 ¶ A(3). Among other things, the policy excludes losses or damages resulting from frozen plumbing and vacancy unless certain conditions are met. *Id.* at 11 ¶ B(2)(e), 18 ¶ E(9).

---

[1] The relevant facts are taken from the parties' Local Rule 56(a)(1) Statements and attached exhibits. *See* Def.'s Local Rule 56(a)(1) Statement of Undisputed Material Facts ("Def.'s SMF"), ECF No. 30-2; Pl.'s Local Rule 56(a)(1) Statement of Undisputed Material Facts ("Pl.'s SMF"), ECF No. 32-1. All of the facts set forth herein are undisputed unless otherwise indicated.

In a section entitled "Property Loss Conditions," the policy listed Plaintiff's duties in the event of a loss, providing, in relevant part:

> **3. Duties In The Event Of Loss Or Damage**
>
> a. You must see that the following are done in the event of loss or damage to Covered Property:
>
> . . . .
>
> (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

*Id.* at 14 ¶ E(3). The policy also provides:

> **4. Legal Action Against Us**
>
> No one may bring a legal action against us under this insurance unless:
>
> a. There has been full compliance with all of the terms of this insurance; and
>
> b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred

*Id.* at 15 ¶ E(4).

For over five years, until October 2019, Plaintiff rented the property to a long-term tenant. Pl.'s SMF ¶ 7. In the spring of 2019, while the tenant was still occupying the dwelling, Plaintiff's sole member Michael Festa received a phone call from the Waterbury Bureau of Water informing him of excessive water use at the property. *Id.* ¶ 9. Mr. Festa contacted the tenant about the high water usage, and the tenant told him that the washer and water meter were broken, but that there was otherwise no damage to the property. *Id.* ¶ 10. A few months later, in the summer of 2019, Plaintiff received a bill from the Waterbury Bureau of Water for over $9,000 worth of water. *Id.*

4

¶ 12. Plaintiff did not, however, inspect the inside of the dwelling until October 2019. Def.'s SMF ¶¶ 11, 13.[2]

Plaintiff evicted the tenant in October 2019, and the tenant moved out on October 22, 2019. Pl.'s SMF ¶ 8. The next day, Plaintiff inspected the property and noticed that walls had been repaired and plumbing work had been done. Def.'s SMF ¶ 15. Mr. Festa stated that it was during this inspection that Plaintiff became aware of any damage to the property. Pl.'s SMF ¶¶ 14, 16.

Plaintiff filed an insurance claim for water damage with Defendant in November 2019, describing the loss as "a furnace malfunction and the water pipes froze and burst. There is water damage on the basement floor, walls, first and second floor bathroom, kitchen walls and there is mold throughout the house." Def.'s SMF ¶¶ 16–17. As part of its investigation of the claim, Defendant examined Mr. Festa under oath. *Id.* ¶ 18. During that examination, Mr. Festa stated that he believed that frozen pipes had caused the damage to the property, but he was unable to identify the location of the frozen pipes and stated that no broken pipes were visible on the property. *Id.* ¶ 19. He also was unable to provide any estimates or appraisals of the loss that was being claimed. *Id.* ¶ 24.

On May 11, 2020, pursuant to the policy, Defendant requested that Plaintiff provide it with a signed, sworn proof of loss within sixty days identifying the damages that Plaintiff was claiming under the policy. *Id.* ¶¶ 25, 27. Defendant provided Plaintiff blank copies of a proof of loss form to complete, entitled "Sworn Statement in Proof of Loss." *See* Def.'s Ex. B, ECF No. 30-6. The form inquired into, among other things, the time (including the hour, day, month, and year), cause

---

[2] Plaintiff allegedly attempted to inspect the property after it was contacted by the Bureau of Water in Spring 2019 but was prevented from doing so due to the tenant's schedule. Pl.'s SMF ¶ 11. However, Plaintiff does not contest that it did not visit or inspect the property until October 23, 2019. *See* Pl.'s Local Rule Statement of Facts in Opposition to Summary Judgment ("Pl.'s Facts in Opp'n") ¶ 13, ECF No. 42-1.

and origin, and cash value of Plaintiff's claimed loss, and required signatures from both Plaintiff and a Notary Public. *Id.*

Despite repeated reminders and extensions of the sixty-day deadline by Defendant, Plaintiff failed to provide Defendant with a proof of loss. Def.'s SMF ¶¶ 28–31. Therefore, on August 18, 2020, Defendant's counsel sent a letter to Plaintiff's counsel advising them that a failure to submit the proof in a timely fashion may result in a forfeiture of coverage. *Id.* at ¶ 31.

On September 3, 2020, Plaintiff's counsel sent Defendant's counsel an assessment of damage (the "Assessment"), which was prepared by a representative of ClaimPro Public Insurance Adjusters. Pl.'s SMF ¶ 18; Def.'s Ex. 6 ("Assessment"), ECF No. 30-8. The Assessment estimates the total cost of building damage, water bills, and loss of rents as a result of the claimed damage to the property. *See* Assessment at 2. It also provides a detailed breakdown of the repairs allegedly needed in each room of the property and the cost of each repair. *See id.* at 5–18. Plaintiff did not, however, provide Defendant with a completed proof of loss form at any point before this litigation was commenced. *See* Def.'s SMF ¶ 35; Pl.'s Facts in Opp'n ¶ 35.

While the parties dispute whether Defendant ever formally denied Plaintiff's insurance claim, it is undisputed that Plaintiff never received any payment from Defendant. Pl.'s SMF ¶ 20. Plaintiff brought this action in Connecticut state court on March 5, 2021, and Defendant, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, timely removed this action to federal court on March 17, 2021. *See* Notice of Removal, ECF No. 1.

Over a year after this litigation was commenced, on June 6, 2022, Plaintiff provided Defendant with a completed proof of loss form. Pl.'s Facts in Opp'n ¶ 35; *see* Pl.'s Ex. 6 ("Proof of Loss"), ECF No. 42-7; Def.'s Reply at 5, ECF No. 45. Plaintiff's responses on the form indicate

that a "water damage loss" occurred on the property "due to frozen pipes" "[a]t some time in the winter or spring of 2019." Proof of Loss ¶ 1.

At this juncture, Plaintiff has two remaining claims against Defendant: 1) breach of contract, and 2) breach of the implied covenant of good faith and fair dealing.[3] Now pending before the Court are the parties' cross motions for summary judgment. *See* ECF Nos. 30–31.

## DISCUSSION

## Defendant's Motion for Summary Judgment

The Court first addresses Defendant's motion for summary judgment. Defendant argues that it is entitled to summary judgment on both of Plaintiff's remaining counts: Count One alleging breach of contract and Count Two alleging breach of the implied covenant of good faith and fair dealing. Def.'s Mot. Summ. J. at 1, ECF No. 30.

### *Count One: Breach of Contract*

Defendant argues that Plaintiff's breach of contract claim fails as a matter of law because Plaintiff failed to submit a signed, sworn proof of loss, which Defendant alleges was a condition precedent to coverage under the policy. Def.'s Mem. in Supp. at 8, ECF No. 30-1. Plaintiff counters that its failure to timely submit a proof of loss does not prevent it from recovering under the policy because it substantially complied with its performance obligations under the policy. Pl.'s Mem. in Opp'n at 5, ECF No. 42. Plaintiff further asserts that it did supply Defendant a signed and notarized proof of loss statement on June 6, 2022 and thereby satisfied the condition. *Id.* at 9.

In an action by an insured for breach of an insurance contract, the insured bears the burden of proving compliance with the terms of the insurance policy, including conditions precedent to

---

[3] Plaintiff's Complaint originally alleged four counts against Defendant: 1) breach of contract; 2) breach of the implied covenant of good faith and fair dealing; 3) a violation of the Connecticut Unfair Insurance Practices Act; and 4) a violation of the Connecticut Unfair Trade Practices Act. *See* Complaint at 1–6, ECF No. 1. On June 21, 2021, the Court granted Defendant's motion to dismiss counts three and four. *See* Order, ECF No. 18.

coverage. *Nat'l Pub. Co. v. Hartford Fire Ins. Co.*, 287 Conn. 664, 674 (2008). "A condition

precedent is a fact or event which the parties intend must exist or take place before there is a right

to performance." *Christophersen v. Blount*, 216 Conn. 509, 512 (1990) (quoting *Lach v. Cahill*,

138 Conn. 418, 421 (1951)). "[I]f an express condition in [a] contract is not fulfilled, the right to

enforce the contract does not come into existence." *Id.* at 512 (cleaned up). Therefore, an insured's

failure to satisfy a condition precedent in an insurance policy relieves an insurer of its liability to

pay an insured's claim. *See Double G.G. Leasing, LLC v. Underwriters at Lloyd's, London*, 116

Conn. App. 417, 432 (2009). However, for the insurer's liability to be discharged, "the insured's

noncompliance must be substantial or material," and an insurer may still be liable if an insured can

show that it has substantially complied with a policy condition. *Preka v. Vt. Mut. Ins. Co.*, No.

CV156024492S, 2017 WL 6947747, at *2 (Conn. Super. Ct. Dec. 11, 2017) (citing *Arton v. Liberty

Mut. Ins. Co.*, 163 Conn. 127, 133 (1972)).

Here, the policy provides that, as a "Property Loss Condition[]," Plaintiff must send

Defendant "a signed, sworn proof of loss containing the information [Defendant] request[s] to

investigate the claim. . . . within 60 days after [Defendant's] request." Policy at 14 ¶ E. The parties

do not dispute that submitting a signed, sworn proof of loss was therefore a condition precedent to

Plaintiff's entitlement to receive payment under the policy.[4] The parties likewise do not dispute

that Plaintiff did not submit a signed and sworn proof of loss form to Defendant at any point before

this litigation was commenced. At issue here is whether Plaintiff nonetheless has raised a genuine

issue of material fact as to whether it satisfied the proof of loss condition either by submitting the

---

[4] Indeed, Connecticut courts have long held that the submission of a proof of loss in compliance with the terms of an insurance policy is a condition precedent to an enforceable liability under the policy. *See Fields v. Metro. Life Ins. Co.*, 132 Conn. 588, 591 (Conn. 1946); *Finch v. Great Am. Ins. Co.*, 125 A. 628, 630 (Conn. 1924).

signed and sworn proof of loss form on June 6, 2022 or by substantially complying with the policy's provisions.

  1.  *The June 6, 2022 Proof of Loss*

The Court first considers whether Plaintiff satisfied the proof of loss condition by submitting the signed proof of loss form on June 6, 2022—over a year after the commencement of this action and nearly three years after Plaintiff first filed its claim. Plaintiff acknowledges that it failed to provide Defendant a signed, sworn proof of loss within sixty days of Defendant's request as prescribed by the policy. Nevertheless, Plaintiff appears to assert that by providing the Defendant a proof of loss form on June 6, 2022, it satisfied the proof of loss condition. *See* Pl.'s Mem. in Opp'n at 9. Defendant contends that the Court may not consider the proof of loss statement because Plaintiff previously admitted as an undisputed fact that it had not submitted a proof of loss statement, and that Plaintiff therefore may not reopen this factual issue at this juncture. *See* Def.'s Reply at 5.[5]

Generally, an insured's delayed submission of a proof of loss will not result in an automatic forfeiture of the insured's right to recover under a policy, provided that the policy does not make *timely* submission an express condition precedent to an insurer's liability. *Elberton Cotton Mills v. Indem. Ins. Co. of N. Am.*, 145 A. 33, 35 (Conn. 1929); *see also Palkimas v. State Farm Fire & Cas. Co.*, No. CV095022078S, 2013 WL 593924, at *7 (Conn. Super. Ct. Jan. 17, 2013), *aff'd*, 150 Conn. App. 655 (2014). "[S]uch delay merely postpones the time of payment and for bringing suit . . . *provided the time otherwise limited for bringing suit has not expired.*" *Elberton Cotton Mills*, 145 A. at 35 (emphasis added). An insured may therefore satisfy a proof of loss condition by submitting a proof of loss after the time period designated in the policy, but only if they "do so

_____

[5] Insofar as the court rejects Plaintiff's reliance on the June 6, 2022 proof of loss for substantive reasons, it need not determine whether Plaintiff is foreclosed from advancing this argument in the first instance.

within the time limitation designated in the policy for bringing suit." *McCarthy v. Travelers Indem. Co.*, No. CV 970345443S, 2000 WL 372801, at *4 (Conn. Super. Ct. Mar. 29, 2000); *see also* Steven Plitt et al., *When Proof is Contract Stipulation*, 13A Couch on Ins. § 193:24 ("In the absence of an express forfeiture provision in the policy, the failure to make proof in the time required merely postpones the time of bringing suit, and if proof is subsequently made the insured may recover, provided, of course, limitations on the action have not expired."). And, while Connecticut appellate courts have not had occasion to consider a proof of loss submitted by an insured after litigation has commenced, at least one trial court has held that a proof of loss "must be filed before suit to recover against the policy is instituted." *Loricco v. Allstate Ins. Co.*, No. CV990068619S, 2002 WL 237460, at *2 (Conn. Super. Ct. Jan. 28, 2002).

Here, the Court need not determine whether *timely* submission of a proof of loss is an express condition precedent to Plaintiff's right to recover, because the policy unequivocally provides that no action may be brought against Defendant under the policy unless "[t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." Policy at 15 ¶ E(4). As observed above, the date on which the loss occurred is unknown and disputed. However, the loss must have occurred before October 23, 2019—the date on which Plaintiff first discovered the property damage. It follows that the latest that Plaintiff could have brought this action under the policy, and therefore the latest that Plaintiff could have conceivably submitted its proof of loss, is October of 2021—which is well before the submission of the June 6, 2022 proof of loss.[6] Therefore, Plaintiff cannot rely upon the June 6, 2022 proof of loss form to satisfy the proof of loss condition precedent to coverage.

---

[6] As noted, at least one Connecticut trial court has held that a proof of loss condition cannot be satisfied after the commencement of litigation. *Loricco*, 2002 WL 237460, at *2. Because the June 6, 2022 proof of loss was untimely regardless, the Court need not decide the separate issue of whether, under Connecticut law, Plaintiff is precluded from relying upon a proof of loss submitted after the commencement of litigation.

2. *Substantial Compliance*

Plaintiff also argues that it is entitled to recover under the policy because it "substantially complied with the insurance policy." Pl.'s Mem. in Opp'n at 5. In response, Defendant first appears to argue that substantial compliance is not the standard by which compliance with a proof of loss condition is measured, stating, "[t]he failure of an insured to comply with a proof of loss condition in an insurance policy, like other cooperation provisions, is a breach of the policy which discharges the insurer's duty to make any payments to the insured and which provides an absolute defense to action on the policy." Def.'s Reply at 2 (citing *Palkimas*, 150 Conn. App. 655, and *Preka*, 2017 WL 6947747, at *4). Defendant alternatively argues that, even if substantial compliance is the proper measure for evaluating the satisfaction of a proof of loss condition under Connecticut law, Plaintiff did not substantially comply with the proof of loss provision. *Id*. at 3–7.

Defendant's reliance on *Palkimas* for the proposition that substantial compliance is not the correct standard for reviewing the satisfaction of proof of loss conditions is misplaced. The issue in *Palkimas* was whether an insurer is obligated to show that it was prejudiced in order to avoid liability under an insurance policy when an insured admittedly failed entirely to satisfy a proof of loss condition. *See* 150 Conn. App. at 658–59. The plaintiff in *Palkimas* conceded that he failed to submit a proof of loss as required by his insurance policy and made no claim that he substantially complied with, or even attempted to comply with, the proof of loss condition. *See* 150 Conn. App. at 659. The *Palkimas* court was not asked to consider, and therefore did not consider, what standard should be used to determine *whether* a proof of loss condition is satisfied. *See id.* at 659–60. Conversely, here Plaintiff does *not* admit that it failed to satisfy the proof of loss condition, but rather that it did, in fact, satisfy the condition through substantial compliance.

Under Connecticut law, "the general rule with respect to compliance with contract terms is not one of strict compliance, but substantial compliance." *Pack 2000, Inc. v. Cushman*, 311 Conn. 662, 675 (2014) (cleaned up). Although the Court has located only one Connecticut case evaluating a proof of loss condition using the doctrine of substantial compliance, *see Hartford Roman Cath. Diocesan, Corp. v. Interstate Fire & Cas. Co.*, 199 F. Supp. 3d 559, 582, 591–93 (D. Conn. 2016), *aff'd*, 905 F.3d 84 (2d Cir. 2018), Connecticut courts have often used the doctrine to evaluate the satisfaction of other contractual conditions precedent, *see, e.g.*, *Wells Fargo Bank, N.A. v. Fitzpatrick*, 190 Conn. App. 231, 242–43 (2019) (using substantial compliance as the standard to evaluate whether a notice condition in a mortgage contract was satisfied); *Double G.G. Leasing, LLC*, 116 Conn. App. at 432–33 (holding that a cooperation condition in an insurance contract "is not broken by a failure of the insured in an immaterial or unsubstantial matter"). Therefore, the Court assumes, without deciding, that Connecticut courts would likewise apply the doctrine of substantial compliance to evaluate whether the Plaintiff satisfied the proof of loss condition.

"The doctrine of substantial compliance is closely intertwined with the doctrine of substantial performance," and "shields contracting parties from the harsh effects of being held to the letter of their agreements." *Pack 2000, Inc.*, 331 Conn. at 675 (quotation marks omitted). Therefore, for an insurer's duty to pay a policy claim to be discharged, an insured's imperfect compliance with contractual provisions "must be substantial or material; a policy condition is not broken by a failure of the insured in an immaterial or unsubstantial matter." *Preka*, 2017 WL 6947747, at *2; *see also Pack 2000, Inc.*, 331 Conn. at 675. "There is no simple test for determining whether substantial performance has been rendered." *Onthank v. Onthank*, 206 Conn. App. 54, 63 (2021). However, "an important factor is whether the deviation defeated the contract's purpose,"

*Pack 2000, Inc.*, 311 Conn. at 685 (cleaned up), and "the degree to which the purpose behind the contract has been frustrated," *Onthank*, 206 Conn. App. at 63.

As the insured bears the burden of showing contractual compliance, the insured likewise bears the burden of proving that they substantially complied with the terms and conditions of an insurance policy. *See Bergen v. Standard Fire Ins. Co.*, No. CV 93044099S, 1997 WL 809957, at *2 (Conn. Super. Ct. Dec. 31, 1997). Ordinarily, whether an insured has substantially complied with all contractual provisions is a question of fact to be determined by the factfinder. *Pack 2000, Inc.*, 331 Conn. at 685. However, "an issue that ordinarily presents a question of fact may become a question of law when the mind of a fair and reasonable factfinder could reach only one conclusion; or where the undisputed subordinate facts require such conclusion as a matter of law." *Preka*, 2017 WL 6947747, at *2 (internal citation omitted). "Thus, an insurer's motion for summary judgment does not necessarily fail merely because it involves a question of substantial compliance." *Id.*

Here, Plaintiff argues that it "provided the Defendant with information that is so similar to what is required"—namely, by providing Defendant the Assessment and having Mr. Festa submit to an examination under oath. Pl.'s Mem. in Opp'n at 9. Defendant disagrees that the information it received served as a reasonable substitute for the proof of loss form and argues that the utter failure to submit the proof of loss form renders it impossible for Plaintiff to establish substantial compliance with the proof of loss condition. *See* Def.'s Reply at 3–5. The Court agrees. Defendant sought a signed, sworn proof of loss on multiple occasions so as to allow Defendant to evaluate Plaintiff's claim and determine whether the policy even provided coverage for the claimed loss. Plaintiff does not dispute that it did not submit a completed proof of loss form to Defendant at any

time prior to the commencement of this litigation. Nor did Plaintiff submit any other signed, sworn documentation purporting to serve a similar function.

Plaintiff offers no excuse for this failure, aside from alleging that it could not "completely and adequately fill out the proof of loss statement as requested by the defendant due to the vague language in their proof of loss form." Pl.'s Mem. in Opp'n at 8–9. In support of this justification, Plaintiff points to a single question on the proof of loss form, which inquired: "To the _____ of _____." *Id.* However, Plaintiff's complete lack of action on this front belies any justification. Plaintiff did not attempt to complete the form to the best of its ability, nor did Plaintiff seek clarification as to the form's requirements despite Defendant's repeated requests for the completed form. Given the fact that the date, cause, and manner of the loss remain largely elusive, Plaintiff's reluctance to submit a sworn statement on these issues is perhaps understandable. But the failure to do so precludes any finding of substantial compliance with the proof of loss condition. *Cf. Aleksov v. Auto Owners Ins. Co.*, No. 338264, 2018 WL 2222734, at *3 (Mich. Ct. App. May 15, 2018) (rejecting an insured's argument that it could not comply with a proof of loss condition because the time period to file a proof of loss had expired, reasoning that the insured attempted to submit the form even after it was requested by the insurer after the alleged expiration date, and further noting that if a proof of loss condition could be satisfied by substantial compliance where an insured made no attempt to submit one, "the condition would be struck from the policy and would change its terms").

Other courts have reached the same conclusion, distinguishing substantial, albeit imperfect, attempts to comply with proof of loss conditions from the unjustified "total failure" to comply when adjudicating liability under an insurance policy. *See, e.g.*, *1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1018 (2006) ("While the submission of a

14

proper and timely notice and proof of loss may be subject to a 'substantial compliance' standard and even a predicate requirement of insurer prejudice, the total failure to comply with the notice and proof of loss conditions will excuse insurer liability due to the failure of a condition precedent." (internal citations omitted)); *Telerico v. Nationwide Mut. Fire Ins. Co.*, 529 F. App'x 729, 733–34 (6th Cir. 2013) ("The Michigan courts have consistently held that an insured has not substantially complied with an insurance policy requiring a sworn proof of loss if they have not timely submitted a signed and sworn statement attesting to their alleged loss."); *Gehani v. Am. Zurich Ins. Co.*, 287 F. Supp. 3d 574, 580 (D. Md. 2017) (similar); *Edwards v. SafePoint Ins. Co.*, 318 So. 3d 13, 18 (Fla. Dist. Ct. App. 2021). For example, in *Edwards*, the Florida court held that an insured could not claim substantial compliance with a proof of loss condition where she never attempted to submit the proof of loss form that was repeatedly requested by the insurer. *See* 318 So. 3d at 17–19. The *Edwards* court also rejected the insured's argument that she had substantially complied with the proof of loss condition by "provid[ing] the requested additional documents in the form of a repair receipt and estimate when [she] made the supplemental claim," reasoning that "[t]he question is not whether, in a general sense, the insured cooperated to some degree with [the insurer's] investigation; rather, the question is whether the insured cooperated to some degree *with the proof-of-loss condition*. That the insured ultimately submitted an estimate and other documents is irrelevant." *Id.* (emphasis in original).[7]

---

[7] Plaintiff also argues that it substantially complied with the policy terms generally and identifies several of the terms that it allegedly complied with to support its argument. Pl.'s Mem. in Opp'n at 6–7. The Court rejects this argument. Plaintiff had a separate and distinct obligation to satisfy these other terms of the policy. *See Preka*, 2017 WL 6947747, at *4 (rejecting the plaintiffs' argument that they substantially complied with an examination-under-oath condition by complying with other policy provisions because "the plaintiffs were already required to do these things pursuant to other provisions in the policy, which provisions were separate and distinct from the examination under oath requirement here at issue"). Given that the failure to satisfy a proof of loss condition is in itself sufficient grounds to deny an insured's claim under a policy, *see Palkimas*, 150 Conn. App. at 659–60, Plaintiff cannot satisfy the proof of loss condition here by complying with some, or even most, of the policy's other conditions and terms, *see Onthank*, 206 Conn. App. at 63. Plaintiff must show that it substantially complied with the proof of loss condition, specifically.

Even if Plaintiff could establish substantial compliance in the absence of having submitted any proof of loss, the examination under oath of Mr. Festa and the Assessment are inadequate to do so. Turning first to the Assessment.[8] The Assessment reads like an itemized receipt, listing the types of repairs needed in each room of the Property, the "Unit Price" for each of those repairs, and the total cost for those repairs. Notably missing from the unsigned, unsworn Assessment is any indication of when the damage occurred, what caused the damage, or even what the damage actually was.[9] In fact, the expert that prepared the Assessment stated in his deposition that he was never asked to reach a determination as to the cause of the "water damage." Def's Reply Ex. B, at 11–12, ECF No. 45. Of course, it was incumbent on Plaintiff to show that its claim fit within the terms of the all-risk businessowners policy, including that Plaintiff suffered a covered, fortuitous loss that was not barred by any of the policy's exclusions or limitations. *See Downs v. Nat. Cas. Co.*, 146 Conn. 490, 496 (1959); *Giovanna's Rest. v. Twin City Fire Ins.*, No. CV 970396989S, 1998 WL 950977, at *2 (Conn. Super. Ct. Dec. 28, 1998). Without information regarding the date or cause of the loss, there was no way that Defendant could "determine *its liability* and the amount thereof" under the policy, which, as the parties both agree, is the purpose of the proof of loss condition. Pl.'s Mem. in Opp'n at 8 (quoting *Zimmerman v. Allstate Prop. & Cas. Ins. Co.*, 354 Or. 271, 281 (2013) (emphasis added); Def.'s Mem. in Supp. at 8.[10]

---

As observed by the Michigan court in *Aleksov,* to accept Plaintiff's argument would allow insureds (and courts) to rewrite insurance contracts, eliminating terms agreed to by the parties. *See* 2018 WL 2222734, at *3.

[8] The parties have very different views as to the usefulness of the Assessment. Plaintiff states that the Assessment "detailed all the description of the damage in multiple areas of the apartment and the total cost of the replacement for all the damage and determined the loss of rents." Pl.'s Mem. in Opp'n at 8. Defendant, on the other hand, states that the Assessment fails to "describe[] the cause, origin, and scope of the loss being claimed." Def.'s Facts in Opp'n at 4 ¶ 18, ECF No. 39.

[9] The first page of the Assessment states, "Type of Loss: Fire." Assessment at 4. However, Plaintiff has never alleged, nor does the record support, that the cause of damage to the Property was fire damage. Therefore, the Court assumes that this inclusion on the Assessment was made in error.

[10] Furthermore, the Assessment submitted by Plaintiff to Defendant was neither signed nor sworn. Other courts have held that information provided by an insured in lieu of a proof of loss form will not substantially comply with a proof of loss condition if it is not signed or sworn to when the insurer makes a demand for a signed, sworn proof of loss. *See Pentecostals of Pasadena v. Phila. Indem. Ins. Co.*, No. CV H-09-954, 2010 WL 11583436, at *4 (S.D. Tex. July

16

The examination under oath of Mr. Festa is similarly deficient. Plaintiff states that Mr. Festa "provided information about where the damage occurred on the property, his opinion of how the damage occurred, and he described the damage to his property." Pl.'s Mem. in Opp'n at 7. Although Mr. Festa does indeed offer his opinion as to these topics, his speculation is an insufficient substitute to the signed, sworn proof of loss. Mr. Festa's answers are hedged with qualifiers such as "I believe" and "I want to say," and he offers no conclusive information regarding the cause of the loss or the extent of the damage. *See, e.g.*, Def.'s Ex. 3 at 41–45, 53, 57, ECF No. 30-5. Conversely, the proof of loss form sought sworn information conclusively identifying the time, cause and origin, and cash value of Plaintiff's claimed loss. Given the important fraud-prevention function served by the signed, sworn proof of loss, Plaintiff was required to provide more than its member's inconclusive beliefs regarding the facts underlying its claim.

Finally, it is notable that at this juncture nobody, not even Plaintiff's expert, can identify the cause of the damage to all of the affected areas of the property.[11] Defendant is still unsure what of the claimed damage arises from the alleged water damage. This is precisely the predicament that the proof of loss condition is meant to prevent, and the reason why the information proffered by Plaintiff to Defendant is not sufficient to satisfy the proof of loss condition. *See McCarthy*, 2000 WL 372801, at *4 n.3 (emphasizing the "practical importance of a sworn proof of loss" and

---

29, 2010); *see also Home Owners Ins. Co. v. Griffith*, No. 312707, 2014 WL 5462597, at *4 (Mich. Ct. App. Oct. 28, 2014) ("Because there is an important policy reason for requiring a properly signed proof-of-loss statement, substantial compliance is lacking if the statement submitted is unsigned."); *Telerico*, 529 F. App'x at 734 ("Because fraud prevention is one of the key purposes of the proof of loss requirement, the failure to timely submit a sworn proof of loss cannot constitute substantial compliance with the requirement, notwithstanding the submission of other claim-related documentation.").

[11] Plaintiff's expert notes in his report that "the leak in the basement resulted from a frozen plastic water pipe," but he was unable to identify water leak sources in the kitchen and laundry/bathroom areas on the first floor of the property. Def.'s Facts in Opp'n Ex. 5 at 3, ECF No. 39-4. The report also does not mention any damage to the second floor of the property, although Plaintiff's Assessment lists a plethora of repairs allegedly needed on the second floor. *See* Assessment at 2.

noting that, due to the plaintiff's failure to submit a sworn proof of loss, the defendant "did not know what the plaintiff was claiming . . . or the amount being claimed").

Thus, there is no dispute of material fact as to whether Plaintiff satisfied the proof of loss condition of the policy. Because Plaintiff failed to satisfy the proof of loss condition, Defendant was not obligated to pay Plaintiff's claim under the policy. As such, Defendant's motion for summary judgment on Count One of Plaintiff's Complaint is GRANTED.

### Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

The Court next considers Defendant's motion for summary judgment on Count Two of Plaintiff's Complaint, which alleges that Defendant breached the implied covenant of good faith and fair dealing. Plaintiff avers that Defendant acted in bad faith by "caus[ing] delays in [Defendant's] own investigation to the detriment of the Plaintiff" and "misle[ading] the Plaintiff to comply with [Defendant's] investigation only to deny the benefit the Plaintiff is entitled to receive under the policy of insurance." Pl.'s Mem. in Opp'n at 11. Because the Court finds that Defendant's motion for summary judgment should be granted on Plaintiff's breach of contract claim, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must likewise fail. A plaintiff does not raise a viable bad faith claim "[u]nless the alleged failure to investigate led to the denial of a contractually mandated benefit." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 796 (2013). Insofar as Plaintiff was not entitled to receive any benefits under the policy due to its failure to comply with the proof of loss condition, Plaintiff cannot assert an independent claim arising from Defendant's purported bad faith in the investigation of Plaintiff's claim. Accordingly, Defendant's motion for summary judgment on Count Two is GRANTED.

18

**Plaintiff's Motion for Summary Judgment**

As Defendant has established that it has no liability under the policy, it is axiomatic that Plaintiff cannot establish a breach of the policy provisions by the Defendant and Plaintiff's motion for summary judgment must be DENIED.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 30, is GRANTED, and Plaintiff's Motion for Summary Judgment, ECF No. 31, is DENIED. The Clerk of the Court is directed to enter judgment for Defendant and close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of December 2022.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE