UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| 50 WATERVILLE STREET TRUST, LLC )<br>    *Plaintiff*, )<br> )<br>v. )<br> )<br>VERMONT MUTUAL INSURANCE )<br>CO. <br>    *Defendant*. | CASE NO. 3:21-CV-00368 (KAD)<br><br><br><br>FEBRUARY 27, 2023 |

## ORDER DENYING [48] MOTION FOR RECONSIDERATION

"A motion for reconsideration is committed to the sound discretion of the court." *Kregos v. Latest Line, Inc.*, 951 F. Supp. 24, 26 (D. Conn. 1996). In general, the three grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted). Motions for reconsideration "must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391–92 (S.D.N.Y. 2000). In other words, "[a] motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *SPGGC, Inc. v. Blumenthal*, 408 F. Supp. 2d 87, 91 (D. Conn. 2006) (internal quotation marks omitted).

Plaintiff alleges that the Court "overlooked" controlling law in ruling on the parties' cross motions for summary judgment. Mot. for Recons. at 4, ECF No. 48. The "controlling law" allegedly overlooked is two executive orders issued during the height of the COVID-19 pandemic by Connecticut Governor Ned Lamont, which suspended certain time requirements, statutes of limitations, and deadlines in Connecticut judicial proceedings. *See* Exec. Order No. 7G (Mar. 19,

2020); Exec. Order No. 10A (Feb. 8, 2021). Plaintiff argues that these executive orders tolled Plaintiff's contractual obligation to timely provide Defendant a signed, sworn proof of loss as required under the Policy and therefore that Plaintiff's submission of a proof of loss in June of 2022—three years after the Plaintiff's claimed loss occurred and more than a year after the instant suit was commenced—may satisfy the Policy's proof of loss condition. *See* Mot. for Recons. at 7.

Plaintiff's motion must fail because Plaintiff did not advance the argument regarding Governor Lamont's executive orders at any prior stage of the proceedings.[1] Plaintiff's attempts to supplement its argument that the June 2022 proof of loss somehow satisfied its contractual obligations by advancing the instant argument regarding Governor Lamont's executive orders is the quintessential quest for a second bite at the apple. *See Morien v. Munich Reinsurance Am., Inc.*, 270 F.R.D. 65, 69 (D. Conn. 2010). Accordingly, Plaintiff's argument that the Court "overlooked" law that was neither cited nor alluded to by Plaintiff is misplaced and unpersuasive.

Moreover, even if it is determined that the Court ventured beyond the arguments advanced by the parties to resolve the issues before it—whether the June 2022 proof of loss could properly be considered at the summary judgment stage and whether that untimely proof of loss could satisfy

---

[1] The Court disagrees with Defendant's assertion that Plaintiff's motion is procedurally appropriate because the Court "made a decision outside the adversarial issues presented to the Court by the parties." Def.'s Obj. at 2–3, ECF No. 51. To the contrary, whether the Plaintiff's untimely submission of the June 2022 proof of loss could satisfy the Policy's condition *was* presented to the Court in the summary judgment briefing. In the Substantial Compliance section of its Opposition, Plaintiff included a single, contextless sentence regarding the June 2022 proof of loss, stating: "Lastly, on June 6, 2022, Plaintiff's counsel sent counsel for the Defendant a signed and notarized proof of loss statement." Pl.'s Mem. in Opp'n at 9, ECF No. 42. Defendant responded by arguing that the Court should not consider the June 2022 proof of loss at the summary judgment stage given Plaintiff's prior judicial admissions that it had not submitted a proof of loss. *See* Def.'s Reply at 5, ECF No. 45. Defendant further contended that, even if the Court considered the "extremely tardy proof of loss," the June 2022 proof of loss was inadequate and the Court should find that the "extremely late filing of the document" prejudiced Defendant as a matter of law. *Id.* at 6 & n.3. While it is true that Plaintiff did not advance any analysis as to how the June 2022 proof of loss satisfied the proof of loss condition of the Policy (or why the Court could properly consider the document at the summary judgment stage), in an attempt to give due consideration to Plaintiff's one-sentence assertion regarding the potential significance of the June 2022 proof of loss and to Defendant's arguments challenging the proof of loss's impact at this stage of the proceedings, the Court analyzed the document's legal significance and determined that it did not change the calculus in this case. Indeed, had the Court not addressed the impact, if any, of the June 2022 proof of loss when deciding the cross motions for summary judgment, Plaintiff would undoubtedly have sought reconsideration for the Court's failure to do so.

the Policy's conditions—the Court did not "overlook" any controlling law in doing so. Beyond the fact that Plaintiff does not cite to any *controlling* law, *see McCracken v. Verisma Systems, Inc.*, No. 6:14-cv-06248 (MAT), 2018 WL 4095104, at *2 (W.D.N.Y. Aug. 28, 2018) (noting that nonbinding precedent, including district court decisions, cannot constitute "controlling law" sufficient to warrant reconsideration), neither the executive orders nor case law cited by Plaintiff are applicable or otherwise persuasive. The Governor's executive orders suspended, *inter alia*, "time requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings." Exec. Order No. 7G, ¶ 2. There is no indication that the executive orders applied to *contractual* obligations generally, or more specifically to contractual limitations wholly unrelated to the initiation of a lawsuit, as is at issue here.

As observed in *Onthank v. Public Storage Statutory Trust*, the only case cited by Plaintiff addressing the effect of the Governor's executive orders on contractual terms, a contractual limitations period for bringing suit is *not* a statute of limitations as Plaintiff asserts, but an enforceable condition of the contract itself. *See* No. FSTCV216052333S, 2021 WL 5413676, at *2 n.1 (Conn. Super. Ct. Nov. 2, 2021) (citing *Monteiro v. Am. Home Assurance Co.*, 177 Conn. 281, 283 (1979)). Notably, the court in *Onthank* did *not* hold that the Governor's executive orders tolled the one-year contractual limitations period at issue in that case. *See id.* at *2 n.2. Rather, the court denied summary judgment because it found issues of material fact as to whether the contractual limitations period should be strictly enforced under the specific circumstances of the case, including the possibility that the plaintiff had been prevented from *filing suit* due to the impact of the global pandemic on court access and operations. *Id.* at *2–3. *Onthank* is therefore inapposite. In fact, none of the cases cited and relied upon by the Plaintiff provide authority for the proposition that the Governor's orders suspended contractual obligations. Thus, Plaintiff has

3

not identified any applicable controlling law that the Court overlooked in ruling on the cross motions for summary judgment. Accordingly, Plaintiff's Motion for Reconsideration, ECF No. 48, is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of February 2023.

                                       /s/ Kari A. Dooley
                                       KARI A. DOOLEY
                                       UNITED STATES DISTRICT JUDGE